UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: ALSON ALSTON             :
                                :        Case No. 18-16008
            Debtor              :        Chapter 11


# ALSON ALSTON'S PLAN OF REORGANIZATION
# DATED DECEMBER 3, 2016

# ARTICLE I
## SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Alson Alston (the "Debtor") from the estate rental income. There is sufficient income from these sources to pay fully for the Plan in accordance with the relevant portions of the Code, as demonstrated below.

The Plan calls for Debtor to use approximately half of the estate's cash reserves in a continuing real estate improvement process to create higher end office rentals at 2834 and 2836-38 W. Girard Avenue, Philadelphia, PA 19130.  The core strategy is to create a shared office space environment among the two buildings, which are conveniently adjacent to each other, so can share telecommunications, materials, equipment, security and labor services.[1] After having completed approximately 70% of this buildout and conversion, the Debtor now demonstrates herein that the projected total revenues of the estate's rental operations, including the new rentals, will easily sustain the estate, with the generation of **$1,714,980** in total income, while servicing **$1,663,285** in administrative expenses + creditor payments over the five years of the Plan.  All debts of the estate are met, including all past due and new tax payments, with unsecured creditors receiving 35-55 cents on the dollar.

Because this buildout will also support a traditional rental operation, Debtor could quickly adapt to the traditional private office rental model at any time, should the potentially more lucrative shared office operation prove problematic.  In the traditional model, the total income generated from all of the estate's rentals is **$1,124,580** and there will be **$1,223,413** in administrative expenses + creditor payments over the five years of the Plan.  All debts of the estate are met, including all past due and new tax payments, with unsecured creditors receiving far less than they would in the shared office space operation, at only 2 cents on the dollar. Furthermore, that Plan completely exhausts the cash reserves, which we will estimate as $50,000 at the start of the Plan – Month #1 currently projected to be Feb. 1 or March 1, 2019.

---

[1] The buildout is improving 2834 W. Girard Avenue from two stable efficiency apartments and one unusable office into two efficiencies and four higher-end offices, with each office approximately 300-500 sf.  Each office will support 4 shared office space desks at an average of $400/desk rental fee per month.  Alternatively, each office will rent for approximately $1000/mo as a private office on the very busy commercial corridor in which they are located.  2836 W. Girard Avenue is an unusual design whose size and features make it lacking as an efficient office space for one tenant.  Debtor's buildout reclaims unused portions of the building, repairs the extensive plumbing damage from multiple winters of frozen pipes, resurfaces all bathrooms and floors, moves out hundreds of items residing there in semi-permanent storage and brings in internet components, computers, high-tech adjustable desks and chairs to support 20 new office desk rentals, two private offices, a large conference room that can be booked online by the hour.  In its current renovated condition, Debtor estimates that he could easily rent 2836 for $3000-4000/mo, perhaps up to $5000/mo, if given sufficient time for the market to find it.  Both shared spaces include complimentary spring water, standard teas, coffee and fruit.  To reduce the labor costs that are included in the projections in this statement, renters will be able to defray their costs by performing basic cleaning, shopping and helpdesk tasks.

1

      This Plan provides for eight classes of secured claims; one class of unsecured claims; one class of non-government priority claims; and no classes of equity security holders. This Plan provides for the payment of administrative and priority claims. IRS priority claims will be paid at 100% of principal during the Plan, subject only to proof of prior payment, proof of inapplicable assessment or state court order. City of Philadelphia ("the City's") priority claims will be paid pursuant to any allowed amount, plus interest. Student loan claims will be paid at 100% of principal, with partial payments during the Plan and the balance paid after discharge.

      All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

      There are two phases of the Plan, described in Section III.D of the Disclosure Statement. The following tables contain a summary of expenditures and income for each phase of the Plan and a cumulative total of all Plan expenditures and income from Year #1 through Year #5.[2]

---

[2] Throughout the Plan, the amounts indicated as being paid to the creditors are not projections, they are commitments under the Plan. The amounts indicated will be increased only by Court order. The amounts indicated for a specific creditor will be decreased only by agreement with that creditor or by Court order; if payments to creditors with unclassified claims or creditors in Classes 1-10 are so reduced, the amount of the reduction will be distributed to the Class 10 creditors in a pro rata manner. With the last payment of the Plan, any undistributed funds available for creditors will be distributed to Class 10 creditors.

**Table 1. Summary of Plan by Phases: *Shared Office Rental Operation*.**

| Phase | I | | II | | Plan Totals |
|---|---|---|---|---|---|
| Months | # 1-12 | | #13-60 | | |
| Category | Income | Expenses | Income | Expenses | |
| Cash Balance at Start of Phase | $50,000 | | $50,435 | | |
| A. Monthly Income and Admin Expenses: | | | | | |
| *Real Estate:* | | | | | |
| Rent | $16,835 | | $26,635 | | |
| Non-Mortgage Exp. | | $6,021 | | $7,685 | |
| Maint/Renov/Labor | | $750 | | $750 | |
| Mgmt. Fee Paid to Debtor | | $4,885 | | $4,885 | |
| *Personal:* | | | | | |
| Outside Employment | $0 | | $0 | | |
| Mgmt Fee Rec'd from Estate | $4,885 | | $4,885 | | |
| Living Expenses | | $4,885 | | $4,885 | |
| Miscellaneous | | $0 | | $0 | |
| **Income/Admin Exp. Totals** | $21,720 | $16,541 | $31,520 | $18,205 | |
| **Net:** Cash Available for Plan Pmts/Month | | $5,179 | | $13,315 | |
| B. Non-Admin Expenses Paid Under Plan: | | | | | |
| Regular Mortgage Payments | | $4,926 | | $4,925.72 | $295,543 |
| Priority tax payments | | $0 | | $173 | $8,326 |
| Secured tax payments | | $0 | | $1,435 | $68,864 |
| Non-Mortg Secured Creditors | | $0 | | $0 | $0 |
| US Trustee Quarterly Fees | | $217 | | $325 | $18,200 |
| Unsecured creditors | | $0 | | $4,167 | |
| Total Monthly Plan Payments | | $5,142 | | $11,026 | $590,933 |
| C. **Plan:** Income not Distributed each month | | $36 | | $2,289 | |
| Months in this Phase | | 12 | | 48 | |
| Total Income this Phase | | $ 202,020 | | $ 1,512,960 | $ 1,714,980 |
| Total Admin Expenses this Phase | | $ 198,496 | | $ 873,856 | $ 1,072,352 |
| Plan Payments during this Phase | | $ 61,709 | | $ 529,224 | $ 590,933 |
| Net Cash Flow during this Phase | | $ 435 | | $ 109,879 | $ 110,315 |
| Cash Balance at End of Phase | | $ 50,435 | | $ 160,315 | |

\* We assume that there will be cash reserves of $50,000 at the start of the Plan, currently anticipated to be February or March 2019.

**Table 2. Summary of Plan by Phases: *Traditional Private Rental Operation*.**

| Phase | I | | II | | Plan Totals |
|---|---|---|---|---|---|
| Months | # 1-12 | | #13-60 | | |
| Category | Income | Expenses | Income | Expenses | |
| Cash Balance at Start of Phase | $50,000.00 | | $57,395 | | |
| A. Monthly Income and Admin Expenses: | | | | | |
| *Real Estate:* | | | | | |
| Rent | $14,835 | | $14,835 | | |
| Non-Mortgage Exp. | | $3,441 | | $3,441 | |
| Maint/Renov/Labor | | $750 | | $750 | |
| Mgmt. Fee Paid to Debtor | | $4,885 | | $4,885 | |
| *Personal:* | | | | | |
| Outside Employment | $0 | | $0 | | |
| Mgmt Fee Rec'd from Estate | $4,885 | | $4,885 | | |
| Living Expenses | | $4,885 | | $4,885 | |
| Miscellaneous | | $0 | | $0 | |
| **Income/Admin Exp. Totals** | $19,720 | $13,961 | $19,720 | $13,961 | |
| **Net:** Cash Available for Plan Pmts/Month | | $5,759 | | $5,759 | |
| B. Non-Admin Expenses Paid Under Plan: | | | | | |
| Regular Mortgage Payments | | $4,926 | | $4,925.72 | $295,543 |
| Priority tax payments | | $0 | | $173 | $8,326 |
| Secured tax payments | | $0 | | $1,435 | $68,864 |
| Non-Mortg Secured Creditors | | $0 | | $0 | $0 |
| US Trustee Quarterly Fees | | $217 | | $217 | $13,000 |
| Unsecured creditors | | $0 | | $0 | |
| Total Monthly Plan Payments | | $5,142 | | $6,751 | $385,733 |
| C. **Plan:** Income not Distributed each month | | $616 | | ($992) | |
| Months in this Phase | 12 | | 48 | | |
| Total Income this Phase | | $ 178,020 | | $ 946,560 | $ 1,124,580 |
| Total Admin Expenses this Phase | | $ 167,536 | | $ 670,144 | $ 837,680 |
| Plan Payments during this Phase | | $ 61,709 | | $ 324,024 | $ 385,733 |
| Net Cash Flow during this Phase | | $ 7,395 | | $ (47,609) | $ (40,213) |
| Cash Balance at End of Phase | | $ 57,395 | | $ 9,787 | |

\* We assume that there will be cash reserves of $50,000 at the start of the Plan, currently anticipated to be February or March 2019.

4

The calculations of rental income and expenses in both rental scenarios rely upon Debtor's 25-years of knowledge and experience pricing and managing rentals. As well, Debtor has obtained expert advice from a real estate agent who understand both markets. (See Ex. A.) For the Office Space Share operation, the following estimates and assumptions hold in Phase I (Year #1 of the Plan) and Phase II (Years #2-5 of the Plan).

**Table 3. Year #1 Detailed Projections for the *Office Space Share Operation*.**

| Cls | Address | Rents | Non-mortg Exp. | Mortg Exp. (P+I) | RE Taxes (if not escrowed) | Insurance (if not escrowed) | Other Exp |
|---|---|---|---|---|---|---|---|
| 2 | 2825 W. Girard Ave., Phila. | $2,175 | $450.47 | $850 | $0 | $347 | $103 |
| N/A | 2827 W. Girard Ave., Phila. | $3,245 | $763.82 | $0 | $371 | $293 | $100 |
| 3 | 2834 W. Girard Ave., Phila. (2 efficiencies, does not include Shared Office Space)[1] | $1,115 | $733.76 | $1,079 | $286 | $347 | $100 |
|  | Shared Offices #1-2 (4 desks each)[2] | $3,200 | $754.00 |  |  |  | $754 |
|  | Shared Offices #2-4 (4 desks each)[3] | $0 | $0.00 |  |  |  | $0 |
| 4 | 4904 Monument Rd., Phila. | 300 | $75.00 | $1,370 | $0 | $0 | $75 |
| 5 | 3033 Baltz St., Phila.[4] | 0 | $0.00 | $0 | $0 | $0 | $0 |
| 6 | 2836 W. Girard Ave., Phila. (not including Shared Office Space)[5] |  | $968.29 | $1,627 | $371 | $347 | $250 |
|  | Shared Work Spaces #1-10 (4 sm, 4 med desks; 2 lg desks, 2 pvt offices)[6] | $6,800 | $2,276.00 |  |  |  | $2,276 |
|  | Shared Work Spaces #11-20 (4 sm, 4 med desks; 2 lg desks, 1 conf rm)[7] | $0 | $0.00 |  |  |  | $0 |
|  | **TOTALS** | $16,835 | $6,021.34 | $4,926 | $1,028 | $1,335 | $3,658 |
|  | ***Net Income*** *(Rent-Mortg-Exps)* | $5,888 |  |  |  |  |  |

**Notes & Explanations**

[1] 2834 W. Girard Ave. -- Cramdown of Interest and Term only. Contract principal: $201,000, 30y, 5%

[2] 2834 W. Girard Ave. -- Shared offices. 8 desks @ $400 each/mo

   Labor Partial Contribution: 8 hrs/day * 1 day/week * $12/hr * 4.25 wks/mo.

   Refreshments: 2 beverages/day/guest * $.20/cup * 30 d * 8 guests/d;

   Additional Utilities and Misc. $250/mo

[3] 2834 W. Girard Ave. -- Shared offices. Assume, conservatively, no rentals for the first year.

[4] 3033 Baltz St. -- Debtor will surrender property to mortgagee within first 6 months of Plan.

[5] 2836-38 W. Girard Ave. -- Cramdown of $537,089 foreclosure judgment. Section 506 value $303,025, 30y, 5%

[6] 2836-38 W. Girard Ave. -- Shared offices #1-10. (4 sm dsk @ $400/ea, 4 med @ $500/ea;

   2 lg @ $600/ea, 2 pvt offices * $1,000/ea)

   Labor Partial Contribution: 8 hrs/day * 4 day/week * $12/hr * 4.25 wks/mo.

   Refreshments: 2 beverages/day/guest * $.20/cup * 30 d * 12 guests/d;

   Additional Utilities and Misc. $500/mo

[7] 2836-38 W. Girard Ave. ---- Shared offices. Assume, conservatively, no rentals for the first year.

5

**Table 4. Years #2-5 Detailed Projections for the *Office Space Share Operation*.**

| Cls | Address | Rents | Non-mortg Exp. | Mortg Exp. (P+I) | RE Taxes (if not escrowed) | Insurance (if not escrowed) | Other Exp |
|---|---|---|---|---|---|---|---|
| 2 | 2825 W. Girard Ave., Phila. | $2,175 | $450.47 | $850 | $0 | $347 | $103 |
| N/A | 2827 W. Girard Ave., Phila. | $3,245 | $763.82 | $0 | $371 | $293 | $100 |
| 3 | 2834 W. Girard Ave., Phila. (2 efficiencies, does not include Shared Office Space)[1] | $1,115 | $733.76 | $1,079 | $286 | $347 | $100 |
| | Shared Offices #1-2 (4 desks each)[2] | $3,200 | $754.00 | | | | $754 |
| | Shared Offices #2-4 (4 desks each)[3] | $3,200 | $604.00 | | | | $604 |
| 4 | 4904 Monument Rd., Phila. | 300 | $75.00 | $1,370 | $0 | $0 | $75 |
| 5 | 3033 Baltz St., Phila.[4] | 0 | $0.00 | $0 | $0 | $0 | $0 |
| 6 | 2836 W. Girard Ave., Phila. (not including Shared Office Space)[5] | | $968.29 | $1,627 | $371 | $347 | $250 |
| | Shared Work Spaces #1-10 (4 sm, 4 med desks; 2 lg desks, 2 pvt offices)[6] | $6,800 | $2,276.00 | | | | $2,276 |
| | Shared Work Spaces #11-20 (4 sm, 4 med desks; 2 lg desks, 1 conf rm)[7] | $6,600 | $1,060.00 | | | | $1,060 |
| | **TOTALS** | **$26,635** | **$7,685.34** | **$4,926** | **$1,028** | **$1,335** | **$5,322** |
| | ***Net Income** (Rent-Mortg-Exps)* | **$14,024** | | | | | |

**Notes & Explanations**

[1] 2834 W. Girard Ave. -- Cramdown of Interest and Term only. Contract principal: $201,000, 30y, 5%

[2] 2834 W. Girard Ave. -- Shared offices #1-2. 8 desks @ $400 each/mo
   Labor Partial Contribution: 8 hrs/day * 1 day/week * $12/hr * 4.25 wks/mo.
   Refreshments: 2 beverages/day/guest * $.20/cup * 30 d * 8 guests/d;
   Additional Utilities and Misc. $250/mo

[3] 2834 W. Girard Ave. -- Shared offices #3-4. Assume, fully rented for Years 2-5.
   Labor Partial Contribution: 8 hrs/day * 1 day/week * $12/hr * 4.25 wks/mo.
   Refreshments: 2 beverages/day/guest * $.20/cup * 30 d * 8 guests/d;
   Additional Utilities and Misc. $100/mo
   **Note:** These remain conservative estimates because Debtor is not including income
      from 2 add'l small desks and assumes no growth in Mo #13-60.

[4] 3033 Baltz St. -- Debtor will surrender property to mortgagee within first 6 months of Plan.

[5] 2836-38 W. Girard Ave. -- Cramdown of $537,089 foreclosure judgment. Section 506 value $303,025, 30y, 5%

[6] 2836-38 W. Girard Ave. -- Shared offices #1-10. (4 sm dsk @ $400/ea, 4 med @ $500/ea;
      2 lg @ $600/ea, 2 pvt offices * $1,000/ea)
   Labor Partial Contribution: 8 hrs/day * 4 day/week * $12/hr * 4.25 wks/mo.
   Refreshments: 2 beverages/day/guest * $.20/cup * 30 d * 12 guests/d;
   Additional Utilities and Misc. $500/mo

[7] 2836-38 W. Girard Ave. -- Shared offices #11-20. (4 sm dsk @ $400/ea, 4 med @ $500/ea;
      2 lg @ $600/ea, 1 conf rm * $2hrs/d *$30/hr)
   Labor Partial Contribution: 8 hrs/day * 2 day/week * $12/hr * 4.25 wks/mo.
   Refreshments: 2 beverages/day/guest * $.20/cup * 30 d * 20 guests/d;
   Additional Utilities and Misc. $100/mo
   **Note:** These remain conservative estimates because Debtor is not including income
      from hourly, daily or wkly renters & assumes no growth in Mo #13-60.

6

Similarly the calculations below hold for the traditional private office rental operation.

Table 5. Years #1-5 Detailed Projections for the *Traditional Private Office Operation*.

| Cls | Address | Rents | Non-mortg Exp. | Mortg Exp. (P+I) | RE Taxes (if not escrowed) | Insurance (if not escrowed) | Other Exp |
|---|---|---|---|---|---|---|---|
| 2 | 2825 W. Girard Ave., Phila. | $2,175 | $450.47 | $850 | $0 | $347 | $103 |
| N/A | 2827 W. Girard Ave., Phila. | $3,245 | $763.82 | $0 | $371 | $293 | $100 |
| 3 | 2834 W. Girard Ave., Phila. (2 efficiencies, 4 traditional, private offices)[1] | $5,115 | $933.76 | $1,079 | $286 | $347 | $300 |
| 4 | 4904 Monument Rd., Phila. | 300 | $75.00 | $1,370 | $0 | $0 | $75 |
| 5 | 3033 Baltz St., Phila.[2] | 0 | $0.00 | $0 | $0 | $0 | $0 |
| 6 | 2836 W. Girard Ave., Phila. (renting the entire building to one tenant)[3] | $4,000.00 | $1,218.29 | $1,627 | $371 | $347 | $500 |
| | **TOTALS** | **$14,835** | **$3,441.34** | **$4,926** | **$1,028** | **$1,335** | **$1,078** |
| | ***Net Income** (Rent-Mortg-Exps)* | **$6,468** | | | | | |

**Notes & Explanations**

[1] 2834 W. Girard Ave. -- Cramdown of Interest and Term only. Contract principal: $201,000, 30y, 5%
    2 efficiencies and 4 traditional, private offices @ $1000/mo

[2] 3033 Baltz St. -- Debtor will surrender property to mortgagee within first 6 months of Plan.

[3] 2836-38 W. Girard Ave. -- Cramdown of $537,089 foreclosure judgment. Section 506 value $303,025, 30y, 5%
    1 commercial rental, conservatively priced at $4,000/mo

The rental estimates for all units are conservative because they assume no growth throughout the Plan.

# ARTICLE II
## **CLASSIFICATION OF CLAIMS AND INTERESTS**

| | | |
|---|---|---|
| 2.01 | Class 1 | All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), ["gap" period claims in an involuntary case under § 507(a)(3),] and priority tax claims under § 507(a)(8)). **Estimate of allowed claim: $0.00.** |
| 2.02 | Class 2 | Secured Claim Unimpaired, to the extent allowed as a secured claim under § 506 of the Code, Shell Point Mortgage Services re: 2825 W. Girard Avenue, Philadelphia, PA. |
| 2.03 | Class 3 | Secured Claim Impaired, as to Interest and Term (not Principal) to the extent allowed as a secured claim under § 506 of the Code, Bayview Loan Servicing re: 2834 W. Girard Ave., Philadelphia, PA. |
| 2.04 | Class 4 | Secured Claim Unimpaired, to the extent allowed as a secured claim under § 506 of the Code, Ocwen for Deutsche Bank re: 4904 Monument Road, Philadelphia, PA. |
| 2.05 | Class 5 | Secured Claim Impaired, as to Principal, Interest and Term, valuation pursuant to an appraisal and CMA, to the extent allowed as a secured claim under § 506 of the Code, Ocwen for Wells Fargo re: 3033 Baltz Street, Philadelphia, PA. |
| 2.06 | Class 6 | Secured Claim Impaired, as to Principal, Interest and Term, valuation pursuant to a CMA and Debtor's property management experience, to the extent allowed as a secured claim under § 506 of the Code, Fay Servicing Corporation for Citibank re: 2836-38 W. Girard Avenue, Philadelphia, PA. |
| 2.07 | Class 7 | Secured Claim Unimpaired, to the extent allowed as a secured claim under § 506 of the Code, based on claim of IRS (entire claim will be paid). |
| 2.08 | Class 8 | Secured Claim Impaired, to the extent allowed as a secured claim under § 506 of the Code, based on claims of the City of Philadelphia. |
| 2.09 | Class 9 | Secured Claim Unimpaired, to the extent allowed as a secured claim under § 506 of the Code, based on claims of Other Taxing Entity/Entities. |
| 2.10 | Class 10 | Unsecured Claim Impaired, all Unsecured claims allowed under § 502 of the Code. |

# ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01 Unclassified Claims. Under section §1123(a)(1), administrative expense claims, ["gap" period claims in an involuntary case allowed under § 502(f) of the Code,] and priority tax claims are not in classes.

3.02 Administrative Expense Claims. Each holder of an administrative expense claim allowed under § 503 of the Code [, and a "gap" claim in an involuntary case allowed under § 502(f) of the Code,] will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03 Priority Tax Claims. Each holder of a priority tax claim will be paid [consistent with § 1129(a)(9)(C) of the Code].

3.04 United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

# ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated under this Plan as described in Section III.C of the Disclosure Statement, with Class 1 Priority Claims being paid in full, scheduled throughout the duration of the plan, beginning with the later of the effective date of this Plan as defined in Article VIII below, or the date on which such claim is allowed by a final nonappealable order.

# ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed or will file an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02 Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order].

5.03 Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor assumes the following executory contracts and/or unexpired leases effective upon the [Insert "effective date of this Plan as provided in Article VII," "the date of the entry of the order confirming this Plan," or other applicable date]:

**NONE**

(b) The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the [Insert "effective date of this Plan," "the date of the entry of the order confirming this Plan," or other applicable date]. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than _____ (___) days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

For the claims falling into Class 1, such claims shall be allowed in full on the Effective Date only as to their principal amount, unless a statute requires otherwise. Commencing with the thirteenth month following the Effective Date, the Reorganized Debtor shall make payments for a continuing period of 48 months. Thereafter, the Reorganized Debtor shall have the right to refinance the outstanding balance of each debt on then applicable terms at then current interest rates or continue making payments post-discharge under terms identical to the pre-discharge terms.

For the claims falling into Classes 2 and 4, such claims shall be allowed in full on the Effective Date and their contractual principal and interest payments will be made in all phases of the Plan, in addition to all arrears being satisfied with the completion of the Plan. After the Plan, the Reorganized Debtor shall have the right to refinance the outstanding balance of each loan – **with a lender other than the mortgagee** – on then applicable terms at then current interest rates or continue making payments post-discharge under terms identical to the pre-discharge terms.

For the claims falling into Classes 3, 5 and 6, such claims shall be allowed only as to their principal amount and to the limits of the equity in the respective Properties. The Reorganized Debtor will pay the principal equal to the value of the subject property on the Effective Date under Section 506(a)(1) and will seek a cramdown of interest to 5%, amortized over 30 years, with the new term being 30 years, and make the required monthly payments throughout all phases of the Plan. After the Plan, the Reorganized Debtor shall have the right to refinance the outstanding balance of each loan – **with a lender other than the mortgagee** – on then applicable terms at then current interest rates or continue making payments post-discharge under terms identical to the pre-discharge terms. For Class 5, Reorganized Debtor will sell or deed back to mortgagee during the first six months of the Plan.

For the claims falling into Classes 7, 8 and 9, such secured tax claims shall be allowed only as to the limits of the equity in the bankruptcy estate. (Any balance of the claim in excess of estate's equity shall become unsecured and a priority tax claim.) Reorganized Debtor will pay statutory interest under the Plan. Commencing with the thirteenth month following the Effective Date, the Reorganized Debtor shall make regular payments (likely sufficient to satisfy the balance during the Plan) against the secured claim for a continuing period of 48 months. Thereafter, the Reorganized Debtor shall have the right to refinance the outstanding balance of each tax lien, if any, or continue making payments post-discharge until the balance of the claim is satisfied.

For the claims falling into Class 8, such secured tax claims shall be paid pursuant to the resolution of any disputed claim or, if available, a stipulation signed by Alston and the City of Philadelphia, and approved by the Court, subject only to future state-court-ordered reductions (no refunds will be given). Reorganized Debtor will pay statutory interest under the Plan. Commencing with the thirteenth month following the Effective Date, the Reorganized Debtor shall make regular payments against the secured claim for a continuing period of 48 months. Thereafter, the Reorganized Debtor shall have the right to refinance any outstanding balance of each tax lien or continue making payments post-discharge until the balance of the claim is satisfied.

For the claims falling into Class 10, the unsecured debt will be paid at 35-55%, but possibly less, depending on the disposition of objections to claims, during the 13th thru 60th months of the Plan. (For the traditional office rental operation, unsecured creditors will receive 2 cents on the dollar).

The Debtor will make nominal payments to his student loans through the Plan, as part of the unsecured debt servicing. These loans are not dischargeable, and the creditor will not be impaired.

The Debtor will seek to discharge all allowed Priority Tax Claims, not owed to the City of Philadelphia, that may be discharged pursuant to sections 727 and1141 of the Code.

**If any impaired class of claims entitled to vote shall not accept the Plan by the requisite majority provided in section 1126(c) of the Code, the Debtor reserves the right to amend the Plan, reinstating the debts under Section 1124(2) or undertaking to have the Court confirm the Plan under section 1129(b) of the Code.**

After confirmation and within thirty days after the end of each calendar quarter, the reorganized Debtor shall file with the court and serve on the UST a quarterly financial report for each calendar quarter (or portion thereof) during which the case remains open, in a format prescribed by the UST and provided to the Debtor by the UST.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01 Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

- Administrative Expense means any right to payment constituting a cost or expense of administration of the Reorganization Case that is Allowed under sections 503(b), 507(a)(1), and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtor's Estate, (b) any actual and necessary costs and expenses of operating the Debtor's business, (c) any indebtedness or obligations incurred or assumed by the Debtor in Possession during the Reorganization Case, and (d) any compensation for professional services rendered and reimbursement of expenses incurred, to the extent Allowed by Final Order under sections 330 or 503 of the Bankruptcy Code.
- Allowed means (i) with reference to any Claim, (a) any Claim against the Debtor, which has been listed by the Debtor in its Schedules (as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1007) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (b) any Claim as to which the liability of the Debtor and the amount thereof are determined by a Final Order, or (c) any Claim against the Debtor allowed pursuant to the Plan, and (ii) with reference to any Claim or Administrative Expense, (a) any Claim or Administrative Expense that is the subject of a timely filed proof of Claim or request for an Administrative Expense as to which no objection to allowance or request for estimation has been interposed on or before the applicable period of limitation fixed by the Plan or otherwise ordered by the Bankruptcy Court, or as to which any objection or request for estimation has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (b) any Claim or Administrative Expense expressly allowed under the Plan, or (c) any Claim or Administrative Expense allowed under section 502, 503, or 1111 of the Bankruptcy Code. Unless otherwise specified in the Plan or ordered by the Bankruptcy Court, "Allowed Claim" or "Allowed Administrative Expense" shall not include interest on such Claim or Administrative Expense from and after the Petition Date.

12

- Alson Alston or Alston refers to the Debtor and Debtor-in-Possession in this case.
- Bankruptcy Code means title 11 of the United States Code, as amended from time to time, as applicable to this Reorganization Case.
- Bankruptcy Court means the United States Bankruptcy Court for the Eastern District of Pennsylvania, or any other court of the United States having jurisdiction over the Reorganization Case.
- Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075, title 28, of the United States Code, as amended from time to time, as applicable to this Reorganization Case, and any Local Rules of the Bankruptcy Court.
- Business Day means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.
- Cash means legal tender of the United States of America.
- Claim has the meaning set forth in section 101 (5) of the Bankruptcy Code.
- Confirmation Date means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Reorganization Case.
- Confirmation Hearing means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.
- Confirmation Order means the order or orders of the Bankruptcy Court confirming the Plan.
- Cure means the payment of Cash by the Debtor, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (i) cure a default by the Debtor under an executory contract or unexpired lease of the Debtor and (ii) permit the Debtor to assume such executory contract or unexpired lease under section 365 of the Bankruptcy Code.
- Debtor means Alson Alston, as debtor in the Reorganization Case.
- Debtor in Possession means the Debtor in his capacity as debtor in possession in the Reorganization Case under sections 1107(a) and 1108 of the Bankruptcy Code.
- Disclosure Statement means that certain disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.
- Disputed means, with reference to any Claim or Administrative Expense, any such Claim or Administrative Expense (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code, or (b) which has been or hereafter is listed by the Debtor on its Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement of the parties or a Final Order, or (c) as to which the Debtor or any other party in interest has interposed a timely objection and/or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order, or (d)

which arises in connection with an executory contract which, as of the Confirmation Date, has not yet been assumed by the Debtor, and therefore such contract is deemed rejected pursuant to Section 6.01 of the Plan.
- Effective Date – see Section 8.02 of the Plan.
- Estate means the estate of the Debtor as created under section 541 of the Bankruptcy Code.
- Face Amount means either (i) the full stated amount claimed by the holder of such Claim in any proof of Claim filed by the bar date established by the Bankruptcy Court or otherwise deemed timely filed under applicable law, if the proof of Claim specifies only a liquidated amount; or (ii) the amount of the Claim (a) acknowledged by the Debtor or Reorganized Debtor in any objection to such Claim or in the Schedules as an undisputed, non-contingent and liquidated Claim, (b) estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code, or (c) proposed by the Debtor or established by the Reorganized Debtor following the Effective Date, if no proof of Claim has been filed by the bar date or has otherwise been deemed timely filed under applicable law or if the proof of Claim specifies an unliquidated amount.
- Federal Judgment Rate means the rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding the Effective Date and identified at http://www.federalreserve.gov/releases/h15/current/.
- Final Order means an order or judgment of a court of competent jurisdiction, which has been entered on the docket maintained by the clerk of such court, and which has not been reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.
- General Unsecured Claim means any Claim that arose or accrued prior to the Petition Date that is not an Administrative Expense, Priority Tax Claim, Priority Non-Tax Claim, or Secured Claim, but including, without limitation, trade claims and other Claims arising from the rejection of an unexpired lease or executory contract pursuant to the Plan or other Final Order of the Bankruptcy Court.
- Lien has the meaning set forth in section 101(37) of the Bankruptcy Code.
- Non-Debtor Party means either (a) the holders of Allowed Administrative Expense claims, Allowed Priority Non-Tax Claims, Allowed Secured Claims, Allowed General Unsecured Claims, and (b) each of their respective Representatives.

14

- Person means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof, or any other form of legal entity.
- **Petition Date means September 11, 2018, the date on which the Debtor commenced his Chapter 11 Case.**
- Plan means this Plan of Reorganization, including, without limitation, the exhibits and schedules hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.
- Priority Tax Claim means any unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.
- Property means each of those certain parcels of commercial real estate listed in the Debtor's schedules.
- Reorganization Case means the case commenced by the Debtor in the Bankruptcy Court on the Petition Date under chapter 11 of the Bankruptcy Code.
- Reorganized Debtor means Alson Alston.
- Representatives means, with respect to any particular Person or entity, such Person or entity's officers, directors, employees, members, partners, principals, managers, officers, directors, agents, employees, advisors (including any attorneys, financial advisors, investment bankers, and other professionals retained by such Persons or entities), affiliates, and representatives.
- Schedules means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms, as such schedules and statements have been or maybe supplemented or amended through the Confirmation Date pursuant to Bankruptcy Rule 1007.
- Secured Claim means any secured Claim arising pre-petition.
- Secured Creditor means any creditor holding a Secured Claim in this case.
- Tax Code means the Internal Revenue Code of 1986, as amended.
- U.S. Trustee means the United States Trustee appointed under section 581, Title 28 of the United States Code to serve in the Eastern District of
- Pennsylvania.

8.02 Effective Date of Plan. The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

8.03 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

      8.04  Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

      8.05  Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

      8.06 Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Pennsylvania govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## DISCHARGE

      9.01.  Discharge. Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE X
## OTHER PROVISIONS

Please see attached sheets, as relevant.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re: ALSON ALSTON             :
                                :    Case No. 18-16008
        Debtor                  :    Chapter 11


# ALSON ALSTON'S DISCLOSURE STATEMENT AND
# PLAN OF REORGANIZATION
# <u>DATED DECEMBER 3, 2016</u>


# EXHIBITS